**Raymond MARKS, Plaintiff,**

v.

**The GAS SERVICE COMPANY, Defendant.**

**No. 11581.**

United States District Court
W. D. Missouri, W. D.

Dec. 10, 1958.

Pine & Dixon, Warrensburg, Mo., Rogers, Field, Gentry & Jackson, Kansas City, Mo., for plaintiff.

Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

R. JASPER SMITH, District Judge.

This litigation was precipitated by a fire at the plaintiff's residence on the morning of May 18, 1957. The fire occurred at approximately 6:15 A.M. Plaintiff claims serious and painful injuries in the conflagration.

The residence in question was supplied with natural gas by defendant through its Lee's Summit Division. At approximately 9:30 A.M. of the morning of the fire an inspection crew of some seven or eight men, who were employees of the defendant, investigated the fire and its possible causes. Included in this group were the superintendent, manager, and foreman of the Lee's Summit Division, and the assistant to the general superintendent from defendant's Kansas City office. Tests, including what is denominated a "Davis leak detector test," were conducted in the area of the building to determine whether gas was

present. A search for gas was made inside the house, around the gas meter, along the service line, and at the main. Gas was found along the service line. The findings of this investigation were submitted in a written report to defendant which is now in possession of its counsel. Plaintiff, at the time the inspection was made, already had been hospitalized.

Plaintiff commenced suit for his personal injuries in state court on January 23, 1958. The action was removed here by defendant on February 10, 1958. Plaintiff's petition generally alleges a cause of action in tort for the purported negligence of defendant in the installation, maintenance, and repair of the gas pipes, lines and meter on the property involved. Discovery to date consists of fourteen interrogatories addressed to defendant, the answers thereto, the deposition of plaintiff, and the deposition of Paul Handley, superintendent of defendant's Lee's Summit Division and one of the individuals who investigated the possible causes of the fire. Plaintiff now moves under Rule 34 of the Federal Rules of Civil Procedure, Title 28 U.S. C.A., for production of a number of documents for inspection and copying, including the report described here. Defendant objects to the production of the report for two reasons; i.e., (1) that plaintiff has failed to show good cause as required by Rule 34; and (2) that plaintiff merely seeks to delve into defendant's preparation for trial.

For purposes of this memorandum the report is classified as a document obtained by or under direction of an attorney in preparation for possible litigation. The general legal principles relating to production of documents under those circumstances have been amply stated. Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 394, 91 L.Ed. 451; Hauger v. Chicago, Rock Island & Pacific R. Co., 7 Cir., 1954, 216 F.2d 501; Alltmont v. United States, 3 Cir., 1949, 177 F.2d 971, certiorari denied, 1950, 339 U.S. 967, 70 S.Ct. 999, 94 L.Ed. 1375; Safeway Stores v. Reynolds, 1949, 85 U.S.

App.D.C. 194, 176 F.2d 476; Martin v. Capital Transit Co., 1948, 83 U.S.App. D.C. 239, 170 F.2d 811; Helverson v. J. J. Newberry Company, D.C.W.D.Mo. 1954, 16 F.R.D. 330. It is unnecessary to attempt to define (if it is possible to do so under any one given set of facts) the outer limits of the protective cloak of Hickman v. Taylor. Suffice it to say for present purposes that the critical issue is whether or not good cause exists under the present facts for the production of the report. Rule 34 by its own terms requires that good cause be shown for the inspection and copying of documents. Hickman places the additional burden upon the proponent of production that in order to invade the privacy of his adversary's preparation for trial unusual circumstances must exist. But the Supreme Court carefully pointed out the possibility of a factual development justifying disclosure of material garnered in anticipation of suit when it said:

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of

an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. * * * "

The definition of good cause, or of circumstances sufficient to justify disclosure of certain material in an attorney's files is largely within the discretion of the trial court. New York Central R. Co. v. Carr, 4 Cir., 1957, 251 F.2d 433; Williams v. Continental Oil Co., 10 Cir., 1954, 215 F.2d 4; Reynolds v. United States, 3 Cir., 1951, 192 F.2d 987, reversed on another ground, 1952, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727.

I am mindful of the fact that there are alternate methods of solution of a problem similar to this one. Thus it has been held that reports or statements of employees made in the regular course of their duties are subject to discovery. Viront v. Wheeling & Lake Erie Ry. Co., D.C.N.D.Ohio 1950, 10 F.R.D. 45; Herbst v. Chicago, Rock Island & Pacific R. Co., D.C.S.D.Iowa 1950, 10 F.R.D. 14; Mulligan v. Eastern S.S. Lines, D.C.S.D. N.Y.1946, 6 F.R.D. 601. A line of authority with which I am not in complete agreement has distinguished between material prepared by an attorney and that acquired by the work of others such as investigators and claim agents. Panella v. Baltimore & O. R. Co., D.C.N.D. Ohio 1951, 14 F.R.D. 196; 4 Moore's Federal Practice, Section 26.23(8). And it has been reasoned that discovery is not proscribed as to documents prepared well before litigation commenced. McManus v. Harkness, D.C.S.D.N.Y.1951, 11 F.R. D. 402, 403; Hughes v. Pennsylvania R. Co., D.C.E.D.N.Y.1948, 7 F.R.D. 737; Thomas v. Pennsylvania R. Co., D.C.E.D. N.Y.1947, 7 F.R.D. 610. I choose to determine the issue solely on the question of whether good cause for disclosure exists. Counsel for both parties have handled ably the various avenues of discovery here. Defendant's counsel has demonstrated good faith compliance with all methods of discovery plaintiff has pursued. And, as pointed out in Halverson v. J. J. Newberry Company, supra, this certainly has not hurt his position in the dispute over the documents in question.

I have read and considered the cases cited, and others. The closest factual precedent which my research has disclosed is the Court of Appeals decision in Reynolds v. United States, supra. There three civilian employees of the United States were killed in the crash of an Air Force Bomber while flight-testing secret electronic equipment. Their widows brought suit against the United States. Much of the evidence as to the causative factors of the accident was destroyed when the plane was wrecked. Immediately after the incident the Air Force appointed a board of experienced investigators. These individuals took statements from survivors while the facts were still fresh in their minds. A technical and extensive investigation ensued, which resulted in the submission of the statements of the witnesses and the report of the investigative board to the Air Force. Plaintiffs moved for the production of these documents under Rule 34. The district court sustained the motion, 10 F.R.D. 468, and pointed out:

"The plaintiffs have no knowledge of why the accident happened. So far as such knowledge is obtainable, the defendant has it. * * * These statements and the report of the board's investigation undoubtedly contain facts, information and clues which it might be extremely difficult, if not impossible, for the plaintiffs with their lack of technical resources to obtain merely by taking the depositions of the survivors."

For similar holdings see Branyan v. Koninklijke Luchtvaart Maatschappij, D.C.S.D.N.Y.1953, 13 F.R.D. 425; Royal Exchange Assur. v. McGarth, D.C.S.D. N.Y.1952, 13 F.R.D. 150; Bifferato v. States Marine Corp. of Delaware, D.C. S.D.N.Y.1951, 11 F.R.D. 44.

The present situation is analogous. A group of technicians made an investigation within a few hours after the fire to determine whether gas was present and its exact location. They conducted tests in the critical areas. Their findings are now in defendant's possession. This factual material is at this time unavailable elsewhere, and cannot be pieced together by other means. Defendant maintains that it has supplied the names of the persons who conducted the tests through answers to interrogatories, and that plaintiff has made no effort to interrogate all of them. But at the deposition of Paul Handley, who was one of the investigators, plaintiff's counsel questioned him at length about the location of gas. He could recall that gas was found along the service line, that it was not found in certain other places, but could not recall the specific results of the tests. This is not the simple case where each party has the name of a witness and interrogation by either party may be expected to achieve substantially the same result. It has now been over eighteen months since the occurrence in question. While this alone may not justify production of documents, it is significant when considering the detailed and technical nature of the subject involved. And it does not follow necessarily that disclosure of the names of witnesses and their availability for questioning leads to a conclusive showing of lack of good cause for production of statements or reports which they may have given previously. Here the complexity of the subject, the immediacy of the tests after the fire, the technical nature of the report, and the length of time elapsed since the investigation all combine to make it difficult, if not impossible, for plaintiff to obtain the facts involved without recourse to the report. Knowledge of these facts may be vital to the preparation of plaintiff's case. Other discovery routes are inadequate and cumbersome. I find good cause for the production of the report which resulted from the investigation by defendant's employees.

For these reasons, the motion to produce the document in question, denominated number 1 in plaintiff's motion, is sustained. Since defendant has not objected to production of the other material, my ruling need be no broader. Counsel may agree on a mutually satisfactory method of compliance with this order.

It is so ordered.